*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | OPINION |
| v. | : | Criminal Action No.: 08-0600 (FLW) |
| ROBERT FIORELLO, | : | |
| Defendant. | : | |

**WOLFSON, United States District Judge**:

    Presently before the Court is Defendant Robert Fiorello's motion, pursuant to Fed. R. Crim. P. § 11(d)(2)(B), for permission to withdraw his plea of guilty before the imposition of sentence. The United States of America (the "Government") opposes the motion on the grounds that Defendant has failed to establish any basis for the withdrawal of his guilty plea. Defendants' Motion follows the entry of his plea on August 28, 2008, and is essentially grounded in his assertion that he has a viable statute of limitations offense that would preclude prosecution and in the Government's withdrawal of the motion that it had originally filed for departure from applicable sentencing guidelines. This Court denied Defendant's motion to withdraw his guilty plea on the record after hearing oral argument on April 26, 2010. The instant Opinion sets forth the basis for that ruling.

## I. BACKGROUND

As the parties are intimately familiar with the facts, the Court will recite only those facts relevant to the instant motion.

Defendant Robert Fiorello (a.k.a. "Bobby Cars") (hereinafter "Defendant") was involved in a multi-year, multi-million dollar conspiracy with more than a dozen other individuals to roll back the odometers of hundreds of motor vehicles and alter the corresponding vehicle titles. (See Br. in Opp. at 1, 7; See Affidavit of Robert Fiorello ("Fiorello Affidavit"), ¶¶ 2-5). In October 2002, Defendant became aware that he was under investigation and, thereafter, in 2003 acted as an informant, providing the names and roles of the other individuals involved in the scheme. (Fiorello Affidavit at ¶¶ 3-5). Defendant entered a guilty plea on August 28, 2008, to an Information that charged him with one count of odometer rollback in violation of 49 U.S.C. §§ 32703(2) and 32709(b). Coincident with this guilty plea, and in the presence of his counsel, Defendant admitted, under oath, that he and several co-conspirators had engaged in the conspiracy. (T24:20 – T27:11).[1] Defendant further admitted that the conspiracy had begun in January 2001 and continued through December 2003, and that he had participated in the conspiracy knowingly and willfully, meaning that he acted of his own free will and with the knowledge that he was engaged in an illegal scheme to rollback vehicle odometers (T24:20 – T25:4, T27:2 – 11). Defendant's guilty plea was accepted, and findings were made on the record. (T31:16 – T32:4).

On July 9, 2009, the United States Attorney's Office for the District of New Jersey filed a letter to inform this Court of the nature, extent and value of Defendant's cooperation and to support a motion to depart from the applicable sentencing guideline range pursuant to U.S.S.G. §

---

[1] "T__:__" refers to the August 28, 2008 Transcript of Plea in the matter of United States v. Fiorello, No. 08-600 (FLW).

5K1.1 (the "Section 5K1.1 Motion"). (See Fiorello Affidavit, Ex. B). For reasons discussed *infra*, the Section 5K1.1 Motion was subsequently withdrawn. (See Br. in Opp. at 2). Defendant filed the instant motion seeking to withdraw his guilty plea.

### II. STANDARD GOVERNING MOTIONS TO WITHDRAW

Pursuant to Fed. R. Crim. P. § 11(d)(2)(B), a "defendant may withdraw a plea of guilty or nolo contendere . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal."  "Once accepted, a guilty plea may not automatically be withdrawn at the defendant's whim." United States v. Brown, 250 F.3d 811, 815 (3d Cir. 2001) (internal citations omitted).  Courts therefore "look to three factors to evaluate a motion to withdraw: (1) whether the defendant asserts h[is] innocence; (2) whether the government would be prejudiced by the withdrawal; and (3) the strength of the defendant's reason to withdraw the plea." Id.; United States. v. Johnson, 345 Fed.Appx. 854, 857 (3d Cir. 2009); United States v. Surine, No. 09-3345, 2010 WL 1452496, * 1 (3d Cir. Apr. 13, 2010).

"The burden of demonstrating a 'fair and just' reason falls on the defendant, and that burden is substantial." United States v. Jones, 336 F.3d 245, 252 (3d Cir. 2003); United States v. Hernandez, No. 09-1078, 2010 WL 1803819, * 2 (3d Cir. May 6, 2010).  "Once a defendant has pleaded guilty, he must then not only reassert innocence, but give sufficient reasons to explain why contradictory positions were taken before the district court and why permission should be given to withdraw the guilty plea and reclaim the right to trial." Jones, 336 F.3d at 253 (internal quotations omitted); United States v. Mejia, 222 Fed. Appx. 136, 139 (3d Cir. 2007) ("where the defendant asserts his innocence after having admitted guilt during a plea colloquy . . . the defendant must 'give sufficient reasons to explain why contradictory positions were taken before

3

the district court.'") (quoting United States v. Jones, 979 F.2d 317, 318 (3d Cir.1992), superseded by statute on other grounds as stated in United States v. Roberson, 194 F.3d 408 (3d Cir.1999)).

## III. ANALYSIS

### A. "Whether the defendant asserts his innocence"

Addressing the first factor used to determine whether a defendant has demonstrated a fair and just reason for withdrawing his guilty plea, Defendant contends that his innocence is based on his belief that the crime with which he is charged is subject to a viable statute of limitations defense. 18 U.S.C. § 3282 dictates that "except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted *within five years next after such offense shall have been committed*." 18 U.S.C. §3282(a) (emphasis added).  Rather than asserting that he is actually innocent of the crime charged in the Information, Defendant instead points to the post trial motion of co-conspirator Jose Perez as detailing the purported failure of the Government to prove that any overt act of any conspirator was committed after March 2003. (See Br. in Supp. at 2) (citing Brief in Support of Motion for Judgment of Acquittal filed on April 3, 2009 by Defendant Jose Perez in United States v. Anthony LaDuca, No. 3:08-CR-245 (FLW), Doc. 198, pp. 3-8). Relying on the arguments of Perez in his post trial motion, Defendant now asserts that substantial evidence demonstrates that the conspiracy ended in March of 2003, more than five years before the Indictment was returned.  Additionally, Defendant contends that his criminal conduct ceased in October 2002, when he became aware that he was being investigated by federal authorities.  (Fiorello Affidavit at ¶ 3).  Defendant asserts that it was at that point that he "stopped [his] business operations . . . and settled civil claims made against [him] by Lynn's

4

Nissan for $23, 500.00." (Fiorello Affidavit at ¶ 3).  Given his assertion that he withdrew from the conspiracy in October 2002, and his assertion that there is substantial evidence demonstrating that the conspiracy did not extend beyond March of 2003, Defendant contends that he could not be prosecuted.

While Defendant asserts his *legal* innocence based on the statute of limitations defense, Defendant never asserts *factual* innocence in support of the instant motion.  The absence of any assertion of factual innocence by Defendant is fatal to his motion to withdraw.  Indeed, it is well established that in order to satisfy the first element of the standard on a motion to withdraw, a defendant must assert factual innocence. See United States v. Kenley, 299 Fed.Appx 184, 186 (3d Cir. 2008) ("[A] defendant must first assert factual innocence"); see also Brown, 250 F.3d at 818 (explaining that when evaluating a motion to withdraw a plea based on an assertion of innocence, courts "must first examine whether the defendant has asserted his or her factual innocence," and denying the motion where, rather than presenting evidence that she was innocent of the crime to which she pleaded guilty, defendant merely asserted that the Government would be unable to prove its case without a particular witness). Not only does Defendant fail to assert his factual innocence, in his affidavit filed in support of this motion, Defendant actually concedes that he was involved in the conspiracy and only stopped when he became aware that he was under investigation in October of 2002.   (Fiorello Affidavit at ¶ 3). This deficiency alone is sufficient to defeat Defendant's motion.[2]

Even assuming *arguendo* that an assertion of legal innocence is sufficient to support Defendant's motion, Defendant's argument would still fail.  To assert a viable statute of

---

[2]  Additionally, an argument could be made that by pleading guilty, Defendant has waived his statute of limitations defense.  See United States v. Sgarlat, No. 06-723-01 (JBS), 2010 WL 1380254, * 8 (D.N.J. March 31, 2010) ("By pleading guilty, the Defendant waived any potential statute of limitations defense.") (citing United States v. Karlin, 785 F.2d 90, 91-93 (3d Cir. 1986).

limitations defense to conspiracy, a defendant is required to make a *prima facie* showing of the date of abandonment or withdrawal from the conspiracy in order to trigger the commencement of the applicable limitations period. See United States v. Steele, 685 F.2d 793, 803 (3d Cir. 1982). "The defendant must present evidence of some affirmative act of withdrawal on his part, typically either a full confession to the authorities or communication to his co-conspirators that he has abandoned the enterprise and its goals." Id. at 803-04 (citing United States v. United States Gypsum Co., 438 U.S. 422, 464-65 (1978)). The evidence provided by Defendant does not come close to showing such an affirmative act. As previously noted, Defendant merely asserts that when he became aware that he was under investigation in October 2002, he ceased business operations and settled civil claims against him brought by Lynn's Nissan. Significantly, Defendant never affirmatively states that he made a full confession or communicated his withdrawal to his co-conspirators. While Defendant asserts that in January of 2003 he contacted federal agents and began cooperating in their investigation, he never states that he made a full confession. In fact, Defendant concedes that in July or August 2003 he met with the Government, but declined to sign a proffer agreement on the advice of counsel. (Fiorello Affidavit at ¶ 7). Moreover, Defendant's suggestion that he ceased operations is belied by the testimony of two witnesses in the LaDuca trial that show that Defendant's involvement in the conspiracy in fact endured well into late 2003.[3]

Defendant's vague assertion that he communicated his withdrawal to a Government Agent now under investigation for corruption is simply not sufficient to support a finding of withdrawal that could mark the commencement of the statute of limitations period in January

---

[3] The Government cites United States v. Anthony LaDuca, Testimony of Richard Leonard, Trial Transcript 4, p. 63, 1.21 through p. 65, 1.2 and United States v. Anthony LaDuca, Testimony of Special Agent Jason Bevan, Trial Transcript 5, p. 165, 1.23 through p. 166, 1.10; (see also Br. in Opp. at 4-5.)

2003. Significantly, Defendant acknowledged, under oath and in open court, that the conspiracy extended from January 2001 to December 2003, and he pleaded guilty to an Information that charged conduct from "in or about January 2001 through in or about December of 2003." (T 24:22 – T25:3, T31:13 - 15.). In the colloquy that took place during Defendant's plea hearing, this Court questioned Defendant as follows:

> THE COURT: I'm now going to ask you some questions about what you did in this matter:
>
> Between, at least, as early as January of 2001 through in or about December 2003 did you agree with a number of other individuals to sell used motor vehicles, the odometers of which had been rolled back by other co-conspirators, and the titles of which had been altered to conceal that the odometers had been reset?
>
> THE DEFENDANT: Yes, I did.

[T24:20 - T25:4]. Additionally, the Government noted during the plea hearing that it was prepared to prove at trial that Defendant played a significant role in the conspiracy which began in January of 2001 and extended "to approximately December of 2003". [T27:12 - 25]. Thereafter, Defendant pled guilty to the charge in the Information, which expressly stated that Defendant participated in the conspiracy "through in or about December 2003.". [T31:13 - 15].

In order to accept Defendant's contention that he withdrew from the conspiracy in October of 2002, when he ceased business operations, or in January of 2003, when he contacted the Government, this Court would have to find Defendant's testimony during the plea hearing to be false. Additionally, this Court would have to disregard the testimony given by Richard Leonard during the trial of co-conspirator Anthony LaDuca that clearly established Defendant's participation in the conspiracy through December 2003.[4] Given the contradictory position taken

---

[4] The Court notes that Richard Leonard's testimony as to Defendant's involvement in the conspiracy through December 2003 is particularly compelling in light of Leonard's testimony that it was Defendant himself that not only urged Leonard to testify, but actually met with

7

by Defendant in support of the instant motion with regard to the end date of his participation in the conspiracy, this Court was careful to note Defendant's risk of committing perjury and questioned counsel during the motion hearing as to whether he wanted the Court to place Defendant under oath to advise him of the risk and of Defendant's right to remain silent. [2T5:12 - 2T6:5].[5]  Notably, counsel declined and Defendant has never asserted that his statements at the plea hearing were false.  In the absence of any assertion by Defendant that his prior testimony that he participated in the conspiracy through December 2003 was false, this Court must accept that testimony.  Indeed, "[s]tatements, uttered under oath in open court carry a strong presumption of verity." United States v. Ray, No. 08-4852, 2009 WL 4979803, at *3 n.3 (3d Cir. Dec. 23, 2009) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)).  Accordingly, Defendant's statement under oath and in open Court during the plea hearing will be given great weight, and in light of the lack of credibility of Defendant's current assertions, further dictate a finding that Defendant has failed to meet his burden on this factor.

**B. "The strength of the defendant's reason to withdraw the plea"**

Defendant argues that this Court should permit him to withdraw his guilty plea for two reasons: (1) hardship to his family; and (2) because the Government coerced him into entering into a guilty plea by promising him a probationary sentence.  Many challenges to the submission of a guilty plea have been denied where a defendant has been given opportunity to state objections and has been advised of the consequences of pleading guilty, as in the present case. See, e.g., United States v. Solomon, 330 Fed. Appx. 337, 338-39 (3d Cir. 2009) (dismissing a motion to withdraw a guilty plea where the defendant had been given an opportunity to enter objections); United States v. Sacksith, 248 Fed.Appx. 430, 432-33, 435 (3d Cir. 2007) (noting

---

Leonard in prison prior to his testimony in the LaDuca trial.  United States v. Anthony LaDuca, Testimony of Richard Leonard, Trial Transcript 4, p. 108, l. 15 through p. 109, l. 18.
[5]      "2T__:__" refers to the April 26, 2010 Transcript of Motion.

that defendant had been made fully aware of the consequences of pleading guilty and stating that "failure to correctly anticipate the sentence ultimately imposed is not a sufficient reason to withdraw a plea"). Defendant was given the opportunity to object to the terms of the plea bargain, (see T13:1 – 8), and was fully advised on the record that his guilty plea could result in a substantial custodial sentence, (see T17:7 – 18:4), which served to alert him to the effect that his plea would have on his family. Under these circumstances, family hardship is an insufficient reason to allow withdrawal.

Moreover, Defendant has presented no evidence to this Court, other than his bald assertion, that would lead one to believe that his plea was coerced by promise of a probationary sentence. In fact, there is no evidence before this Court that the Government ever promised Defendant such a sentence, and to the contrary, Defendant stated under oath that the Government had made no "promises or assurances to [him] of any kind in an effort to induce [him] to enter a plea of guilty . . ." (T13:17 – 21).  Defendant was fully advised on the record that his guilty plea could result in a substantial *custodial* sentence. (See T17:7 – T18:4). See United States v. Robinson, 186 Fed. Appx. 240, 242 (3d Cir. 2006) (dismissing defendant's motion to withdraw his plea of guilty where there was no evidence in the record that the Government had ever promised a more lenient sentence than he received).

Additionally, counsel's suggestion that demands were being made of Defendant by Agent Palermo, the federal agent now under investigation for corruption, and that Defendant was subject to a "shakedown" by Palermo are simply not sufficient to permit withdrawal on this record.  See Ray, 2009 WL 4979803, at *3 n.3 (stating in dicta that a motion to withdraw a guilty plea based on allegations of coercion will not survive where defendant "answered 'no' when asked whether anyone had promised him anything in exchange for his guilty plea or in any

way induced him to plead guilty," and where "[w]hen asked whether his plea was a product of anything other than his own free will and whether anyone had threatened or coerced him or taken away his right to choose to plead guilty, defendant again responded in the negative."). During his plea hearing, Defendant affirmatively stated under oath that no party had "attempted in any way to force [him] to plead guilty . . . ," (T13:22 – 24), and swore that he was "pleading guilty of [his] own free will because [he was] guilty." (T13:25 – T14:2). In light of Defendant's own testimony that he was not coerced into pleading guilty and the lack of any support in the record for his contention that he was subject to a shakedown, Defendant has not provided any basis for withdrawal on these grounds.

The Government posits an alternate, and more likely, reason that Defendant now seeks to withdraw his guilty plea. The Government withdrew the Section 5K1.1 Motion that it had filed in Defendant's favor when it became apparent that Defendant continued to engage in illegal conduct, even while serving as a cooperating witness. Defendant in fact alludes to his unlawful behavior while serving as a confidential informant, stating in his affidavit that "Detective Palermo started asking me to engage in illegal conduct . . . ." (Fiorello Affidavit at ¶11). Defendant even attached a criminal complaint that elaborates on this conduct, stating "Palermo had [Defendant] perform services . . . includ[ing]: (i) assisting defendant Palermo in obtaining favorable sales prices with respect to the purchase of high-end automobiles; (ii) conducting free repair work on defendant Palermo's automobile; and (iii) assisting defendant Palermo in obtaining favorable prices with respect to significant landscaping work at [his residence]." (See Fiorello Affidavit, Ex. A., at 2, ¶1(D).).

The sentencing guidelines provide that "upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another

person who has committed an offense, the court may depart from the guidelines." U.S.S.G. § 5K1.1.  Since Section 5K1.1 expressly leaves to the government the discretion to file such a motion, it is clear that in the absence of a plea agreement requiring such a motion, "a district court has an extremely limited role in reviewing the government's refusal to move for a departure." United States v. Isaac, 141 F.3d 477, 481 (3d Cir. 1998).  In Wade v. United States, 504 U.S. 181, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992), the Supreme Court held that in the absence of a plea agreement which obligates the government to file a Section 5K1.1 motion, "[f]ederal district courts have authority to review a prosecutor's refusal to file a substantial assistance motion and to grant a remedy if they find that the refusal was based on an unconstitutional motive."  504 U.S. at 185-86.  While Wade did not reach the issue of the effect of a plea agreement on the prosecutor's discretion to file a § 5K1.1 motion, the court in Isaac did consider whether the Government improperly withheld a § 5K1.1 motion where the parties entered into a plea agreement that conditionally obligated the government to file a downward departure motion.  The court opined that "although a plea agreement occurs in a criminal context, it remains contractual in nature and is to be analyzed under contract-law principles." Isaac, 141 F.3d at 481 (internal quotations omitted).  The Court went on to hold that in situations where the prosecutor has the "sole discretion" to determine if the defendant provided substantial assistance, a district court's review was limited to determining whether the prosecutor's refusal to seek a downward departure motion was made in "good faith", which is evaluated under a subjective standard.  Id.  Thus, "where the agreement is conditioned on satisfaction of the obligor, the condition is not met if the obligor is honestly, even though unreasonably dissatisfied." Id. at 482.

11

Here, setting aside Defendant's failure to allege bad faith on the part of the Government in connection with its decision to withdraw the Section 5K1.1 Motion, Defendant has failed to identify any provision in the plea agreement which obligated the Government to even file the Section 5K1.1 Motion. Nowhere within the plea agreement did the Government make any representations regarding a 5K1.1 Motion. In fact, nowhere within the plea agreement is a 5K1.1 Motion even mentioned. Even if the plea agreement had obligated the Government to file a Section 5K1.1 Motion, clearly Defendant's admitted continued involvement in criminal activity with Agent Palermo and Defendant's August 5, 2008 arrest in Monmouth County on other charges provided ample basis for the withdrawal of the Section 5K1.1 Motion.

### C. "Whether the government would be prejudiced by the withdrawal"

Both Parties acknowledge that if Defendant were permitted to withdraw his plea, the Government would suffer prejudice in having to expend precious resources in order to take Defendant to trial. Moreover, Defendant seeks to escape criminal liability in such a trial by pursuing a statute of limitations defense that, as explained above, is completely without merit. Nevertheless, Defendant argues that the prejudice suffered by the Government is insignificant when compared to the continued prosecution of Defendant, a supposedly "innocent" man. However, as previously discussed, Defendant has presented no evidence whatsoever that he is an innocent man, and presumably bases this assertion on his meritless statute of limitations defense. As discussed above, the evidence in the record establishes overt acts in furtherance of the conspiracy well within the statute of limitations. Ultimately, even if there were no prejudice to the Government, there need not even be a showing because, as is explained above, Defendant has failed to assert sufficient grounds to support his motion for withdrawal. See United States v.

Harris, 44 F.3d 1206, 1210 (3d Cir. 1995) (citing United States v. Martinez, 785 F.2d 111, 114, 115-16 (3d Cir.1986)); Solomon, 330 Fed. Appx. at 338.

## IV. CONCLUSION

For the foregoing reasons, and those stated on the record at the April 26, 2010 motion hearing, Defendant's Motion for Permission to Withdraw Guilty Plea is DENIED.


Date: June 14, 2010

                                            /s/ Freda L. Wolfson
                                            FREDA L. WOLFSON, U.S.D.J.